UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH MACK, et al., | |
| Plaintiff, | CIVIL ACTION NO. 1:14-CV-00090 |
| v. | (CONNER, C.J.) (MEHALCHICK, M.J.) |
| PILOT TRAVEL CENTERS, LLC d/b/a/ PILOT FLYING J., | |
| Defendant | |

**REPORT & RECOMMENDATION**

Presently pending before the Court is a motion for summary judgment in the above-captioned "slip and fall" negligence action, filed by the Defendant on June 30, 2015. (Doc. 37). The motion was referred to the undersigned United States Magistrate Judge for a recommended disposition. (Doc. 46). For the reasons stated herein, the Court recommends that Defendant's motion for summary judgment (Doc. 37), be **DENIED**.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Keith Mack and Cantina Mack commenced this lawsuit on January 20, 2014, seeking damages against Defendants CFJ Properties, LLC; Pilot Travel Centers, LLC; Pilot Travel Ventures; Pilot Corporation; Pilot Flying J.; PDG, Inc., d/b/a Flying J PDG, Inc.; Flying J. Travel Plaza; FJ Management, Inc.; Flying J. Inc.; and Flying J. Real Estate Enterprises, Inc., for a slip-and-fall accident sustained by Plaintiff Keith Mack ("Mack") inside the Flying J Travel Plaza located at 1501 Harrisburg Pike, Carlisle, Pennsylvania on January 22, 2012. (Doc. 1). On April 8, 2014, Defendants filed an answer with affirmative defenses denying liability. (Doc. 9). On October 13, 2014, the parties agreed by stipulation that the

correct and only Defendant was Pilot Travel Centers LLC d/b/a Pilot Flying J. The remaining Defendants were thereby terminated from this action.

The relevant facts are presented in the light most favorable to the Plaintiffs, the non-moving party. On January 22, 2012, Mack was a customer at the Flying J Travel Plaza. While there, he used the restroom and then proceeded to the counter to obtain a "com check" from the cashier. Once he completed that transaction, he began walking away from the cashier counter towards the door, passing through a line of customers. As he was passing through the customers waiting in line, Mack slipped and fell. Mack testified at his deposition that he stepped in water on the floor near the cash registers that had been tracked in by customers creating a "slippery and dangerous condition," causing him to slip and fall. While Mack conceded at his deposition that he neither observed any accumulation of water on the floor prior to his slip, nor investigated the premises to identify the cause of his fall after his slip, Mack nevertheless claims that water on the floor caused him to slip, as he observed that both of his pant legs and hands were soaking wet after he fell.[1] The manager on duty at the time completed an incident report and an ambulance was called soon thereafter. As a result of the slip and fall, Mack claims to

---

[1] A video recording from the Store's surveillance system, while partially obstructed by various objects in the foreground, captured Mack's fall and the moments leading up to Mack's fall. Defendant submitted this video as evidence, and both parties dispute what the video shows. Plaintiffs claim that Mack made contact with the ground in the proximity of where he initially slipped and thus, the wet clothing is evidence that water caused him to slip. Defendant claims that Mack lunged forward several feet when he slipped and landed on a wet "walk off" rug that was placed near the entrance of the store, explaining the source of his wet clothing.

have sustained serious and permanent injuries, including but not limited to a herniated disk and meniscus tears in both of his knees.

On June 30, 2015, Defendant filed a motion for summary judgment (Doc. 37), together with a brief in support (Doc. 39), a statement of facts (Doc. 38), and supporting exhibits (Doc. 37). On August 4, 2015, Plaintiffs filed a brief in opposition to Defendant's motion for summary judgment (Doc. 48). On August 10 and 11, 2015, Plaintiffs filed various corresponding exhibits in support of their opposition brief. (Doc. 49; Doc. 50). On August 17, 2015, Defendant filed a reply brief. (Doc. 51). Having been fully briefed, this matter is ripe for disposition.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this

determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III.    DISCUSSION**

   A. SPOLIATION INFERENCE

As a preliminary matter, Plaintiffs attempt to overcome Defendant's summary judgment motion in their opposing brief by requesting that the Court draw an adverse spoliation inference against Defendant. (Doc. 48, at 4). Specifically, Plaintiffs argue that despite Defendant's informal policy of saving twenty minutes of surveillance footage when an incident occurs, Defendant preserved two fragmented videos considerably less than twenty minutes in length.[2]

---

[2] Plaintiffs' characterization of Defendant's "informal" policy of preserving twenty minutes of footage is an oversimplification of Rob Levering's testimony, as he explicitly testifies that he "worked with risk management to determine what they need to . . . show on video, which is about how [they] reached the 20-minute . . . time limit, just a little bit before, a little bit after, whatever [they] can fit." (Doc. 50, at 9). Rob Levering also testified that while twenty minutes was the maximum amount of footage that could be saved from the DVR at one time, it was within the discretion of the support staff exporting the video footage to determine how much video to preserve, as he "would cut it down to less" if he could. (Doc. 50, at 14).

(Doc. 48, at 5). One clip consists of eight-minutes-and-thirty-one seconds of video surveillance footage of Mack prior to the slip, of which thirty-four seconds is taken from camera positioned at an angle that would have allegedly captured the precise spot where Mack slipped. (Doc. 48, at 5). The second clip preserves only fifty-nine seconds of video surveillance footage of the incident itself that begins seven seconds before the fall and ends forty seconds after the fall, which Plaintiffs suggest would have likely shown in the immediate aftermath of the fall the Defendant's agents mopping and cleaning the area where Mack slipped. (Doc. 48, at 5). Thus, Plaintiffs seek to have this Court infer for purposes of this motion for summary judgment that the surveillance footage would have provided evidence of the cause of Plaintiff's slip, thereby precluding the grant of summary judgment in Defendant's favor.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Fortune v. Bitner*, No. CIV. 3:CV-01-0111, 2006 WL 839346, at *1 (M.D. Pa. Mar. 29, 2006) (quoting *Mosaid Techs., Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). It occurs where: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Regarding the actual suppression or withholding standard, the Third Circuit Court of Appeals has clarified that "a finding of bad faith is pivotal to a spoliation determination." *Bull,* 665 F.3d at 79. Thus, the party asserting spoliation must prove that evidence was intentionally withheld, altered or destroyed. *See Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir. 1995) ("[I]t must appear that there has been an actual

suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."). The party seeking a spoliation sanction bears the burden of proof as to these factors. *Byrnie v. Town of Cromwell, Bd. of Ed.,* 243 F.3d 93, 107–08 (3d Cir. 2001).

If the Court finds that there is a culpable destruction or spoliation of evidence, it must then consider the appropriate sanction for the act of spoliation, which requires an examination into the following: "(1) the degree of fault of the party who altered or destroyed the evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and serve as a deterrent." *Griffith v. Mellon Bank,* 173 F. App'x 131 (3d Cir. 2006) (citing *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir. 1994)).

There appears to be no dispute between the parties that the security footage was within Defendant's control, that the security footage from this camera would have been relevant to the claims and defenses in this case, and that the duty to preserve the evidence was reasonably foreseeable to Defendant. The parties depart, however, with respect to whether there was an actual suppression or withholding of evidence.

Applying these standards, and in considering the parties' arguments, the Court finds that Plaintiffs are not entitled to a spoliation inference, as they have produced no evidence that Defendant actually withheld or suppressed the surveillance footage at issue. While Plaintiffs argue that Defendant's submission of only "some" footage somehow "speaks volumes" regarding Defendant's culpable mindset, the substantial footage provided to Plaintiffs, which

tracks Mack through the store and confirms his slip-and-fall, undermines their claim of intentional spoliation when considering the deposition of Rob Levering, a support specialist employed by Defendant. Rob Levering testified that video surveillance footage would be recycled approximately every thirty days. (Doc. 50, at 6). He testified that he recalled being asked in an e-mail to preserve video surveillance created on January 22, 2012 that captured the Mack's slip and fall and was given limited details pertaining to the date, time, and description of the Plaintiff in order to effectuate that request. (Doc. 50, at 6). In accordance with that request, Rob Levering administratively assigned the task of preserving the video to Brandon Domf. (Doc. 50, at 7). In describing the procedure for capturing said video footage, Rob Levering indicated that it would be "impossible" to preserve an entire day's worth of footage over their network, as it would "corrupt and lock up the[ir] DVR[s]." (Doc. 50, at 7). Thus, twenty minutes was "about the known time frame for pulling footage from one of those DVRs." (Doc. 50, at 6). When asked why less than twenty minutes of video was preserved of this incident, Rob Levering testified that to the best of his knowledge, Brandon Domf, the individual who actually exported the video capturing the incident, reviewed the cameras and exercised his discretion in retaining the footage that captured the Plaintiff and the event. (Doc. 50, at 8-9). Furthermore, Rob Levering admitted that on other occasions where he was reviewing footage, he too would attempt to cut it down to less than twenty minutes if he could. (Doc. 50, at 14).

      Based on the evidence presented, the Court is not persuaded that the Defendant acted to suppress relevant evidence in bad faith, as Plaintiffs have failed to demonstrate a fraudulent intent to suppress relevant evidence. 29 Am. Jur. 2d Evidence § 177 ("Such a presumption or

inference arises, however, only when the spoliation or destruction was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."). Quite the contrary, at most, the failure to preserve a full twenty minutes of video footage constitutes negligence on the part of Defendant. *See Bozic v. City of Washington, Pa.,* 912 F. Supp. 2d 257, 270 (W.D. Pa. 2012) (noting that "[a]lmost all of the district court cases applying *Bull* . . . have declined to find spoliation where the party's conduct was no worse than negligent, or where the evidence was lost in the normal course of daily business or other similar activity). Specifically, the deposition testimony of Rob Levering reveals that Defendant's agents retained the portion of the footage that captured the Plaintiff in accordance with the store's routine, informal practices and what was feasible given the limitations with respect to their technology. *See, e.g., United States v. Nelson,* 481 F. App'x. 40, 42 (3d Cir. 2012) (affirming the district court's denial of a spoliation inference where the video tape was recycled pursuant to a prison policy that was even-handedly applied.); *Bozic,* 912 F.Supp.2d at 273 ("[D]estruction [of evidence] that occurs as a result of inadvertence, routine practice, or accident is not spoliation at all."). The evidentiary relevance of capturing the incident from a particular camera (assuming that camera actually presented an unobstructed view of the incident), or preserving more footage prior to and after the incident than what was already provided, and the foreseeability in identifying the need to preserve that type of footage for subsequent litigation purposes would not necessarily have been apparent to Defendant's support staff. *See Universal Underwriters Ins. Co. v. Dedicated Logistics, Inc.*, No. CIV.A. 11-1153, 2014 WL 7335668, at *5 (W.D. Pa. Dec. 19, 2014). More importantly, the Court notes that Plaintiffs have not provided any testimony from the individual who actually reviewed and

exported the footage, Brandon Domf, as to why only a certain amount of footage was preserved, such that this Court could infer bad faith on the part of the Defendant. Indeed, Plaintiffs have proffered no evidence suggesting that Brandon Domf purposefully chose to omit portions of the video that captured Mack while in the store. Rather, the Court is left with Rob Levering's speculations as to the timeframe of the footage provided by Brandon Domf.

Accordingly, as Plaintiffs have not shown bad faith necessary to support a claim of spoliation, the Court will deny Plaintiffs' request to apply a spoliation inference in deciding Defendant's motion for summary judgment. Having determined that the spoliation inference is not appropriate here, the Court now turns to whether summary judgment is warranted in favor of Defendant.

B. SUMMARY JUDGMENT

Plaintiffs assert a negligence claim based on premises liability. A federal court sitting in diversity must apply state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000); citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Pennsylvania law, a plaintiff must prove the following elements to assert a claim in negligence: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Tameru v. W-Franklin, L.P.*, 350 F. App'x 737, 739 (3d Cir. 2009) (quoting *Swift v. N.E. Hosp. of Phila.*, 690 A.2d 719, 722 (Pa. 1997)). In an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance, the burden is on the customer to "prove the existence of the defective condition and the knowledge, actual or constructive, of the real estate possessor of the condition prior to the accident." *Kardibin v.*

*Associated Hardware,* 426 A.2d 649, 652 (Pa. Super. Ct. 1981). Here, Defendant moves for summary judgment on two grounds. First, it argues that Plaintiffs cannot prove, without speculating, what caused Mack to fall. Second, Defendant contends that Plaintiffs have failed to establish that Defendant had actual or constructive notice of the allegedly slippery floor.

1. **Plaintiffs have adduced sufficient evidence of causation even in the absence of a spoliation inference.**

Under Pennsylvania law, the mere occurrence of an accident does not establish negligent conduct. *Hillelson v. Renner*, 130 A.2d 212, 214 (Pa. Super. Ct. 1957) ("Proving that an accident happened, or the existence of an opportunity for it to happen is entirely insufficient to establish negligence.") (citation omitted). "There remains to be proved the vitally important link of causation." *Cuthbert v. Philadelphia*, 209 A.2d 261, 263 (Pa. 1965) (citations omitted). It is axiomatic that a jury cannot be permitted to return a verdict based merely on speculation or conjecture. *Smith v. Bell Telephone Co.*, 153 A.2d 477, 479-80 (Pa. 1959). Rather, as noted by the Pennsylvania Supreme Court:

> [T]here must be evidence upon which logically its conclusion may be based. . . . Clearly this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be [sought].

*Smith*, 153 A.2d at 479-80 (citations omitted) (emphasis in original).

Thus, the plaintiff need not "prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities." *Cuthbert*, 209 A.2d at 263-64. "It is not necessary . . . that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the

10

preponderance favors liability." *McMillan v. Mountain Laurel Racing, Inc.,* 367 A.2d 1106, 1111 (Pa. Super Ct. 1976). However, other non-negligent "causes, including the conduct of the plaintiff and third persons . . . [must be] sufficiently eliminated [as suggested] by the evidence." *Calhoun v. Jersey Shore Hosp.*, 378 A.2d 1294, 1298 (Pa. Super. Ct. 1977) (quoting Restatement (Second) of Torts 328 D(1)(b) (1965)). *See, e.g., Houston v. Republican Athletic Ass'n,* 22 A.2d 715, 716 (Pa.1941) ("Where a defendant is liable for only one or two or more equally probable causes and to say which is a mere guess, there can be no recovery.") (citation omitted).

Pennsylvania courts routinely find that summary adjudication in favor of the business owner is appropriate where plaintiff "could not identify a cause of [the] injuries or merely identified possible causes." *Jones v. Giant Food Stores, LLC*, No. 1:10-CV-1099, 2011 WL 6003193, at *4 (M.D. Pa. Oct. 13, 2011) *report and recommendation adopted*, No. 1:10-CV-1099, 2011 WL 6002986 (M.D. Pa. Nov. 30, 2011) (citing *Freund v. Hyman,* 103 A.2d 658, 659 (Pa. 1954) (upholding nonsuit where plaintiff knew where she fell and photograph showed raised piece of sidewalk in that area, but where she did not produce evidence that the elevation in the step caused her to fall); *Dimino v. Wal–Mart Stores, Inc.,* 83 Pa. D. & C. 4th 169, 172–73 (Pa. C.C.P. 2007) (granting summary judgment for defendant where plaintiff testified she did not know what caused her slip-and-fall but relied on the fact that an oily substance was on her shoe afterwards); *Gallagher v. Dalsania,* 82 D. & C. 4th 118, 126–27 (Pa. C.C.P. 2006) (upholding nonsuit where plaintiff identified several possible causes of trip-and-fall and speculated as to actual cause); *Miller v. Twin Arches Ltd.,* 74 D. & C. 4th 449, 453–59 (Pa. C.C.P. 2005) (granting summary judgment to defendant where plaintiff could identify two possible causes of slip-and-fall but did not present any evidence as to which, if either, was actual cause);

*McNeil v. Ginsburg,* 28 D. & C. 4th 531, 534 (Pa. C.C.P. 1996) *aff'd,* 683 A.2d 319 (Pa. Super. Ct.1996) (upholding summary judgment for defendant where plaintiff was unaware of actual cause of slip-and-fall and circumstances indicated numerous possible causes); *Flocco v. Philadelphia,* 29 Phila. Co. Rptr. 1, 6–8 (Pa. C.C.P. 1994) (granting summary judgment for defendant where accident site was strewn with rocks and debris but no evidence was presented showing that these conditions caused plaintiff to fall)). In reviewing the foregoing line of cases, the theme that has emerged is that courts may find the matter of causation as one based on speculation or conjecture in the most extreme of cases, such as where one of two situations occurs: (1) the circumstantial evidence presents numerous possible causes and the probabilities are at best evenly balanced; or (2) no additional indicators are offered that would point to the cause of the fall but for a later discovery of a substance on the plaintiff's clothing or a later return to the accident site revealing a possible defective condition.

Moreover, "Pennsylvania courts have stated with equal clarity that a jury may draw inferences from the evidence presented to determine whether the facts support a finding of factual causation." *Ozer v. Metromedia Rest. Grp., Steak & Ale of Pa., Inc.*, No. CIV.A. 04-940, 2005 WL 525400, at *5 (E.D. Pa. Mar. 7, 2005) (citing *First v. Zem Zem Temple*, 686 A.2d 18, 21 (Pa. Super. Ct. 1996) ("[I]t is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability"). Applying that standard, courts have repeatedly rejected invitations by defendants to find that "some measure of initial uncertainty voiced by an injured plaintiff regarding the precise cause of her accident and injury defeats the plaintiff's negligence claim, where the plaintiff's testimony taken as a whole identifies an unsafe condition on the defendant's property as the cause of her injuries." *Stamper-Murray v. U.D.H. Mgmt. Corp.*,

No. 1:14-CV-1360, 2015 WL 3840937, at *5 (M.D. Pa. June 22, 2015) (citing *Lowe v. Pirozzi*, No. CIV.A. 05-0548, 2006 WL 1147238, at *34 (E.D. Pa. Apr. 26, 2006) (denying summary judgment); *Meddick v. Brookdale Resort, Inc.*, 878 F. Supp. 696, 698 (M.D. Pa. 1995) (denying summary judgment) (citing *McMillan v. Mountain Laurel Racing Inc.*, 367 A.2d 1106, 1108-09 (1976))).

Here, Defendant contends that there is insufficient evidence in the record to establish causation. Specifically, Defendant argues that a jury would have to speculate as to the cause of Mack's injuries because: (1) the only witness identified by Plaintiffs in discovery is Mack; (2) the surveillance video is obstructed by various objects and as a result, does not show the mechanics of Mack's fall; (3) although Mack testifies that he slipped in water, Mack was not looking down when he fell and did not return to the site to ascertain the cause of his fall; and (4) Mack did not land directly on the spot where initially fell, but rather was thrust forward onto an entrance rug that was likely wet, providing a conceivable explanation as to his wet clothing. Further, Defendant challenges the submission of Plaintiffs' expert report on the basis that the expert does not offer additional evidence to support Plaintiffs' claim that Mack slipped on water, and additionally contests Plaintiffs reliance on the store manager's incident report as simply transcribing Mack's description of the incident.

In considering these arguments, and applying the well-established legal tenants as outlined above to the matter *sub judice*, the Court finds that the question of causation in this case presents a disputed issue of fact for a jury to resolve. Here, Plaintiffs have offered the following evidence in support of their theory that Mack slipped on water tracked into the premises by

customers. Plaintiffs cite to Mack's deposition testimony in which he clearly identified water as the cause of his slip, as demonstrated below:

> Q   Okay. And tell me what caused you to fall? How did you fall?
> A   **I was walking and stepped in some water and started to slip**.
> Q   And did you see the water before you stepped in it?
> A   **No.**
> Q   And did you see the water at some later point?
> A   **Well, my clothes were wet after I fell.**
> Q   Okay. But if you didn't see – you don't know where the water was?
> A   **No.**

(Doc. 37-2, at 12).[3]

Moreover, Plaintiffs submit the expert report of Julius Pereira, III, RA, IFMA, a retained liability expert who indicates that he observed from the surveillance video puddles of water in the area surrounding where Mack fell and would testify that the surveillance video

---

[3] The Court is hard pressed to find support for Defendant's argument that this deposition testimony warrants a finding that the cause of the accident is merely speculative. Mack explicitly states that he "stepped in some water," causing him to slip. Notably, this evidence is more probative than that offered by the slip-and-fall plaintiff in *McMillan v. Mountain Laurel Racing, Inc.,* for example, who testified that:

> I slipped and I fell, and it was something on the floor, whether—my trousers was wet in the back—but I don't know what I slipped on. There was paper and cups and stuff all over the floor, but I don't know what I slipped on.

367 A.2d 1106, 1109 (Pa. Super. Ct. 1976).

There, the court rejected the contention that the plaintiff failed to identify the cause of her fall despite plaintiff's inability to pinpoint what object or substance resulted in her injuries. Here, Mack has consistently and definitively stated that he slipped in water, making the source of his injuries significantly less speculative. Regardless, even assuming Mack's description of what he slipped in could be perceived as voicing some uncertainty as to the cause of his accident, that uncertainty does not eliminate a disputed issue of fact concerning causation. Rather, that is precisely a credibility determination to be teased out at trial.

corroborates Mack's claim that he slipped and fell as a result of water tracked into the store. (Doc. 48, at 10). Additionally, Plaintiffs rely on the store manager's incident report which documents that Mack slipped and fell on a wet floor. (Doc. 48, at 11). Plaintiffs also proffer the surveillance video as evidence of water being the cause of Mack's fall. (Doc. 48, at 11). Specifically, they pinpoint the seventeen second mark of the video as evidence that Mack's pant leg clearly contacted the floor in close proximity to where he slipped, and the twenty-one second mark as evidence that Mack did not fall onto a potentially wet "walk off" rug as Defendant claims occurred. (Doc. 48, at 11).

While Defendant invites the Court to parse through the record and make evidentiary rulings at this stage with respect to the proffered evidence, the Court declines to do so, as it is clear Plaintiffs have produced enough evidence from which a reasonable jury could conclude that a hazardous condition – a wet and slippery floor – existed when and where Plaintiff fell. This is neither a case in which the evidence presents a number of possible causes, nor a case in which the plaintiff came to an uncorroborated conclusion as to what caused his accident sometime after the accident occurred. Plaintiffs' theory of causation is not mere conjecture, as it is deducible as a reasonable inference from the known conditions at the time of his fall. Any challenge to the veracity of Plaintiffs' evidence is more appropriately reserved for trial. *Ozer*, 2005 WL 525400, at *5 ("[C]onventional case law instructs that inconsistencies in a witness's testimony should be left to a jury to decide.") (citing *Strother v. Binkele,* 389 A.2d 1186, 1191 (Pa. Super. Ct. 1978)). Indeed, any uncertainty presented by the deposition testimony defines the factual question to be resolved at trial. *See Stamper-Murray*, 2015 WL 3840937, at *5 ("While the plaintiff's testimony undeniably presents some uncertainty regarding this issue [of causation],

her statement that immediately upon falling as she lay bleeding . . . on the sidewalk[,] she determined that the footing beneath her was uneven and concluded she had fallen due to this uneven sidewalk is, in our view, sufficient to allow a jury to draw a causal inference.").

Accordingly, the Court respectfully recommends denying Defendant's motion for summary judgment (Doc. 37), on the basis that Plaintiffs have submitted sufficient evidence of causation to create a question of fact for trial.

### 2. There is sufficient evidence of notice to defeat summary judgment motion.

In slip-and-fall cases, the nature of the duty of care owed by an owner or occupier of a premises hinges on the relationship between the parties at the time of the plaintiff's injury. In premises-liability actions, the duty of care owed by a possessor of land to an entrant upon the land depends upon whether the entrant is characterized as a trespasser, licensee, or invitee. *Id.* (citing *Guttridge v. AP Green Serv., Inc.,* 804 A.2d 643, 655 (Pa. Super. Ct. 2002)). Here, it is undisputed that Mack was a business invitee at the time of the incident at issue.

Section 343 of Restatement (Second) of Torts, adopted by Pennsylvania courts, defines the duty that a possessor of property owes to an invitee. Specifically, a possessor of property is subject to liability for physical harm caused to an invitee by a condition on the land if, but only if, he "knows or by the exercise of reasonable care would discover the condition." Restatement (Second) of Torts § 343. Therefore, in a premises liability action involving a slip and fall, the relevant inquiry is establishing whether the possessor of the land had notice of the hazardous condition. Indeed, absent notice of a dangerous or defective condition, a business owner cannot be liable to an invitee injured by such a condition. The notice requirement can be satisfied by showing that the defendant "had a hand in creating the harmful condition, or had actual or

constructive knowledge of such condition." *Estate of Swift v. Ne. Hosp. of Phila.,* 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (citing *Moultrey v. Great A & P Tea Co.,* 422 A.2d 593, 598 (Pa. 1980)). There is no evidence in the record suggesting that Defendant had "a hand in creating the harmful condition." Thus, the relevant inquiry is whether Defendant had actual or constructive notice of this hazardous condition. Here, Plaintiffs proceed under a theory that actual notice of a dangerous condition should be inferred from the evidence demonstrating that the dangerous condition – a slippery, wet floor near the cash register in the busiest part of the store – occurred frequently.

Under Pennsylvania law, "where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it." *Moultrey,* 422 A.2d at 596. For actual notice to be imputed to a defendant on the basis of a recurring condition, however, such a condition must have recurred in a "pervasive or obvious" manner. *Farina v. Miggys Corp. Five & Six,* No. 09–00141, 2010 WL 3024757 at *7 (M.D. Pa. July 29, 2010). For example, "[w]eather conditions can . . . support an inference of actual or constructive notice of a hazardous condition when coupled with evidence that the defendant had knowledge of both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises." *Tameru v. W-Franklin, L.P.*, 350 F. App'x 737, 740 (3d Cir. 2009).

Here, Plaintiffs have offered sufficient evidence of a "pervasive or obvious" recurring condition through which a jury could infer actual notice. Plaintiffs submit the expert report of Julius Pereira, III, RA, IFMA, who indicates that it had snowed the day before the incident and

there was snow on the ground outside the Pilot Travel Center. (Doc. 49, at 3). Plaintiffs cite to the deposition of the general manager, Gary Saunders, who testifies that whenever it snowed, customers would track in water from the outside onto the floor. (Doc. 49, at 24). He admitted that he was aware before January of 2012 that customers would track water from the outside onto the floor in the area where Mack fell, which was located in front of the cash registers. (Doc. 49, at 56). He indicates that the location where Mack slipped and fell was the highest traffic area of the store and thus, he would coach or train employees to put more effort into looking for slip hazards in that specific area. (Doc. 49, at 60). In evaluating the evidence in the light most favorable to the Plaintiffs, it is plausible that a reasonable jury could find sufficient facts to establish actual notice.[4]

## IV. RECOMMENDATION

Accordingly, for the forgoing reasons, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Doc. 37), be **DENIED**.

Dated: December 22, 2015

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

---

[4] Because the Court has found that Plaintiffs have presented enough evidence to support an inference that Defendants had actual notice of the slippery conditions of the floor, it will not discuss the arguments addressing constructive notice.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH MACK, et al., | |
| Plaintiff, | CIVIL ACTION NO. 1:14-CV-00090 |
| v. | (CONNER, C.J.) |
| | (MEHALCHICK, M.J.) |
| PILOT TRAVEL CENTERS, LLC d/b/a/ PILOT FLYING J., | |
| Defendant. | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 22, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: December 22, 2015                                                         s/ Karoline Mehalchick
                                                                                                **KAROLINE MEHALCHICK**
                                                                                                **United States Magistrate Judge**